UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHARLES M. MATTERN,                                    Case No.  23-7281

                        Plaintiff,                    **COMPLAINT**

    –  against  –                                          **JURY TRIAL DEMANDED**

PKF O'CONNOR DAVIES, LLP,
HENRY A. FREIRE, in his individual capacity,
and KEVIN J. KEANE, in his individual
capacity,

                      Defendants.

----------------------------------------------------------------X

      Plaintiff, CHARLES M. MATTERN, by and through his attorneys, RUSSO, KARL, WIDMAIER & CORDANO, PLLC, who are duly admitted to practice before this court, sets forth the following complaint and alleges as follows:

<u>**INTRODUCTION**</u>

      1.     Plaintiff, CHARLES M. MATTERN (hereinafter referred to as "Plaintiff"), brings this action to recover monetary, declaratory, and affirmative relief from Defendant, PKF O'CONNOR DAVIES, LLP (hereinafter referred to as "Defendant PKF O'CONNOR DAVIES"), HENRY A. FREIRE (hereinafter referred to as "Defendant FREIRE"), and KEVIN J. KEANE (hereinafter referred to as "Defendant KEANE") (collectively all Defendants will be referred to as "Defendants"), for Defendants' violations of the Family Medical Leave Act (hereinafter referred to as "FMLA"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended ("ADAAA"); the New York State Human Rights Law (hereinafter referred to as the "NYSHRL"), Article 15 of the New York Executive Law; the New York City Human Rights Law (hereinafter referred to as "NYCHRL"),  Title 8, Chapters 1 and 5 of the New York City

1

Administrative Code, New York; statutory law, common law, and equitable claims; and other appropriate rules, regulations, statutes and ordinances.

## JURISDICTION AND VENUE

2.      Pursuant to Title 28 of the United States Code Section 1331, the above-captioned Court maintains jurisdiction over the claims set forth herein, including claims for relief pursuant to the FMLA, the ADAAA, and federal law.

3.      Pursuant to Title 29 of the United States Code Section 2617, the above-captioned Court maintains jurisdiction over the claims set forth herein, and which are properly brought before it, that arise under the FMLA.

4.      Pursuant to Title 42 of the United States Code Section 200e-5(f)(1), the above-captioned Court maintains jurisdiction over the claims set forth herein, and which are properly brought before it, that arise under the ADAAA.

5.      Pursuant to Title 28 of the United States Code Section 1367, the above-captioned Court maintains jurisdiction over the claims set forth herein that arise under the NYSHRL, NYCHRL, along with all claims arising under other appropriate statutes, regulations, rules and ordinances.

6.      The above-captioned Court has the power to declare the rights and other necessary or proper relief based upon a declaratory judgment or decree pursuant to Title 28 of the United States Code Sections 2201 and 2202, whether or not further relief is or could be sought, which shall have the force and effect of a final judgment.

7.      Venue is proper in this United States District Court for the Eastern District of New York pursuant to the general venue statute, Title 28 of the United States Code Section 1391.

8.    This action properly lies in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. § 1391, because Plaintiff is domiciled within this District; Defendant is a registered corporation in New York with offices, among others, in Hauppauge, New York; and a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the above-captioned judicial district.

9.    The unlawful employment practices alleged herein were committed in whole or in part in the Eastern District of New York.

## PARTIES

10.    Plaintiff, CHARLES M. MATTERN, is a citizen of the State of New York, residing in Smithtown, New York, within the Eastern District of New York.

11.    Defendant PKF O'CONNOR DAVIES is located and has its principal place of business at 245 Park Avenue, New York, New York.

12.    Defendant PKF O'CONNOR DAVIES is also located and has its place of business at 665 Fifth Avenue, New York, New York

13.    Defendant PKF O'CONNOR DAVIES also maintains an office located at 878 Veterans Memorial Highway, Hauppauge, New York.

14.    Defendant PKF O'CONNOR DAVIES is a registered limited liability partnership under the laws of the State of New York, who at all times relevant to this matter does business within this District and within the State of New York.

15.    At all times relevant herein, Defendant PKF O'CONNOR DAVIES employed over 900 employees.

16.    Defendant PKF O'CONNOR DAVIES is a national accounting, tax and advisory firm.

17.     At all times relevant herein, Defendant FREIRE was the Chief Operating Officer of Defendant PKF O'CONNOR DAVIES and a member of the Firm's executive board, working in Defendant PKF O'CONNOR DAVIES' Harrison, New York office.

18.     At all times relevant herein, Defendant FREIRE supervised Plaintiff and participated in the unlawful conduct that targeted Plaintiff.

19.     At all times relevant herein, Defendant FREIRE's actions towards Plaintiff were in furtherance of the interests of Plaintiff's employer, Defendant PKF O'CONNOR DAVIES.

20.     At all times relevant herein, Defendant KEANE was the Managing Partner of Defendant PKF O'CONNOR DAVIES and a member of the Firm's executive committee, working in Defendant PKF O'CONNOR DAVIES' Harrison, New York office.

21.     At all times relevant herein, Defendant KEANE supervised Plaintiff and participated in the unlawful conduct that targeted Plaintiff.

22.     At all times relevant herein, Defendant KEANE's actions towards Plaintiff were in furtherance of the interests of Plaintiff's employer, Defendant PKF O'CONNOR DAVIES.

23.     At all times mentioned herein, Plaintiff was an "eligible employee" within the meaning of the FMLA, Title 29 of the United States Code Section 2611(2).

24.     At all times mentioned herein, Defendant PKF O'CONNOR DAVIES was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

25.     At all times mentioned herein, Defendants FREIRE, and KEANE were defined as the "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

26.     At all times mentioned herein, Plaintiff was a "qualified employee" pursuant to 42 U.S.C. § 12111(8) of the ADAAA.

27.     At all times mentioned herein, Defendant PKF O'CONNOR DAVIES was a "covered employer" pursuant to 42 U.S.C. § 12111(5)(A) of the ADAAA.

28.     At all times mentioned herein, Plaintiff was a "person" within the meaning of the New York State Human Rights Law, Section 292(1) of the New York Executive Law of the State of New York, Chapter 18.

29.     At all times mentioned herein, Defendant PKF O'CONNOR DAVIES was an "employer" within the meaning of the New York State Human Rights Law section 292(5) of the New York Executive Law of the State of New York, Chapter 18.

30.     At all times mentioned herein, Defendants FREIRE, and KEANE were each an agent of the "employer" within the meaning of the New York State Human Rights Law, Chapter 18 of the New York Executive Law of the State of New York.

31.     At all times mentioned herein, Plaintiff was a "person" within the meaning of the New York City Human Rights Law, Section 8-102 of the Administrative Code of the City of New York.

32.     At all times mentioned herein, Defendant PKF O'CONNOR DAVIES was an "employer" within the meaning of the New York City Human Rights Law, Section 8-102 of the Administrative Code of the City of New York.

33.     At all times mentioned herein, Defendants FREIRE, and KEANE were each an agent of the "employer" within the meaning of the New York City Human Rights Law, the Administrative Code of the City of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

34.     On July 21, 2022, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") and was assigned the EEOC Charge No. 520-2022-07821.

35.     On or about September 21, 2023, Plaintiff received a Right to Sue Letter from the EEOC.  A copy of that letter is attached as Exhibit "A" and made a part hereof by this reference as though fully set forth herein.

36.     This Complaint is timely filed within ninety (90) days of the EEOC Right to Sue Letter.

37.     Pursuant to Section 8-502(c) of the New York City Administrative Code, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, thereby satisfying the requirements of that section.

38.     Any and all other prerequisites to the filing of this lawsuit have been met.

## STATEMENT OF FACTS

39.     Plaintiff repeats and realleges each and every allegation contained herein.

40.     Plaintiff is a Certified Public Accountant, graduating from Hofstra University with a Bachelor's degree in Business Administration.

41.     Plaintiff maintained his required annual continuing education credits to maintain his C.P.A. license.

42.     Plaintiff's work as an accountant for more than thirty-six (36) years qualified him for the position of partner with Defendants' accounting firm.

### A.  **Defendants' Acquisition of AVZ**

43.     Plaintiff worked as an accountant for the accounting firm, Albrecht, Viggiano, Zureck & Company, P.C. ("AVZ") for approximately 36 years, from May 1984 until December 31, 2020.

44.     Plaintiff was a partner with the AVZ for approximately seventeen (17) years.

45.     On or about August 19, 2020, the entity known as AVZ was purchased by Defendant PKF O'CONNOR DAVIES through an asset purchase agreement ("PKF APA").  A copy of the asset purchase agreement is attached as Exhibit "B" and made a part hereof by this reference as though fully set forth herein.

46.     Defendants FREIRE and KEANE oversaw Defendant PKF O'CONNOR DAVIES' acquisition of AVZ.

47.     Defendants FREIRE and KEANE were present with the partners of AVZ during the discussions concerning the terms of Defendant PKF O'CONNOR DAVIES' acquisition of AVZ.

48.     Plaintiff executed the PKF APA on or about August 19, 2020.

49.     Pursuant to the terms of the PKF APA, effective January 1, 2021, Plaintiff became a partner with Defendant PKF O'CONNOR DAVIES. See PKF APA Section 2.2.

50.     Pursuant to the terms of the PKF APA, Plaintiff was referred to as an "AVZ Equity Partner."

51.     Pursuant to the terms of the PKF APA, Plaintiff's 36 years of service with AVZ was grandfathered into his position as partner with Defendant PKF O'CONNOR DAVIES. See PKF APA Section 2.3(c)(1).

52.     Defendants treated Plaintiff as a partner of Defendant PKF O'CONNOR DAVIES beginning on January 1, 2021.

53.     Effective January 1, 2021, Defendants granted Plaintiff benefits as set forth in the executed PKF APA.

54.     Effective January 1, 2021, Defendants paid Plaintiff $260,000 annually, less a 25% holdback of $65,000; which amounts to $195,000 paid semi-monthly in the amount of $8,125 per pay period or $16,250 per month.  The method of payment was similar to how other PKF partners, who were formerly from AVZ, were paid.

55.     The PKF APA incorporates, by reference, the Partnership Agreement in the recitals of the agreement, in addition to several mentions throughout the agreement.

56.     Defendants did not provide Plaintiff with a Partnership Agreement contemporaneous with the execution of the PKF APA.

57.     Pursuant to the PKF APA, Defendants granted Plaintiff a partnership interest in Defendant PKF O'CONNOR DAVIES in the form of "equity units."  See PKF APA Section 2.5.

58.     As part of the Asset Purchase Agreement, Defendant PKF O'CONNOR DAVIES obtained AVZ's clients in exchange for, among other benefits, equity units granted to each AVZ equity partner.

59.     As a designated AVZ Equity Partner, the PKF APA granted Plaintiff specific benefits from Defendant PKF O'CONNOR DAVIES, including equity units; substantially the same benefits, policies and arrangements as Plaintiff previously had received at AVZ; as well as a defined retirement plan.  See PKF APA Section 2.3.

60.     Pursuant to the terms of the PKF APA, "Each of the AVZ Equity Partners will be eligible to receive a retirement payout in an amount of 2.75 times his average compensation for

the best three (3) years of the last six (6) years immediately prior to retirement (including compensation for any such years at AVZ, if applicable) to be paid over a ten (10) year period." See PKF APA Section 2.3.

61.    Pursuant to the terms of the PKF APA, "each of the AVZ Equity Partners will receive payments of their capital accounts as specified in the Amended and Restated Partnership Agreement and Section 4" of the PKF APA.  See PKF APA Section 2.3.

62.    On or about September 23, 2021, Defendant FREIRE represented to Plaintiff and Plaintiff's representative that he was allocated approximately 1,485 "equity units" in Defendant PKF O'CONNOR DAVIES. Attached as Exhibit "C" is a copy of the September 23, 2021 email.

63.    Despite the specific references to a contemporaneous Amended and Restated Partnership Agreement in the PKF APA, no partnership agreement was made available to Plaintiff in August 2020.

64.    Ten months after the PKF APA's execution, Defendants allegedly attempted to provide Plaintiff with a proposed Amended and Restated Partnership Agreement in June 2021.

65.    As set forth below in paragraph 91 herein, Plaintiff was on an approved FMLA leave of absence in June 2021 and did not receive the proposed Amended and Restated Partnership Agreement.

66.    Defendants allegedly attempted to email Plaintiff the proposed Amended and Restated Partnership Agreement; but Plaintiff did not receive those emails.

67.    On or about August 24, 2021, Plaintiff contacted PKF partner, Robert Quarte, to request a copy of the proposed Partnership Agreement.

68.    On or about August 24, 2021, Plaintiff contacted Defendant FREIRE to request a copy of the proposed Amended and Restated Partnership Agreement.

69.     On or about August 24, 2021, Defendants were aware that Plaintiff had not seen a copy of the proposed Partnership Agreement.

70.     Defendants allegedly attempted, by email, to provide Plaintiff with the proposed Amended and Restated Partnership Agreement on or about September 27, 2021.

71.     On September 30, 2021, three days later, Defendants unlawfully terminated Plaintiff.

72.     Upon information and belief, Plaintiff believes that several individuals were provided with the proposed Amended and Restated Partnership Agreement late in the year 2021 to be executed, not just himself.

73.     Upon information and belief, Plaintiff believes that he was not the only individual that did not execute the proposed Amended and Restated Partnership Agreement on or before September 30, 2021.

74.     Upon information and belief, Plaintiff believes that he is the only partner of Defendant PKF O'CONNOR DAVIES that was denied partnership rights for not executing the proposed Amended and Restated Partnership Agreement on or before September 30, 2021.

75.     Defendants did not compensate Plaintiff for the 1,485 "equity units" that Plaintiff possessed as a partner with Defendant PKF O'CONNOR DAVIES.

76.     Defendants did not compensate Plaintiff for the defined retirement benefit that Plaintiff was entitled to as a partner with Defendant PKF O'CONNOR DAVIES.

77.     Defendants did not compensate Plaintiff for the capital account that Plaintiff was entitled to as a partner with Defendant PKF O'CONNOR DAVIES.

78.    Defendants did not compensate Plaintiff for the book of business transferred by the Plaintiff to the Defendant as part of the PKF APA, with an approximate value of $850,000 in gross client fees.

**B.  Plaintiff's Disability and Serious Medical Condition**

79.    At the time of the discriminatory acts complained of herein, Plaintiff was diagnosed with a major depressive disorder.

80.    Prior to the events at issue in this Complaint, Plaintiff had suffered from the condition, depression, for several years.

81.    At all times relevant herein, Jeffrey S. Davoli and Joseph C. Ferreira were the co-managing partners of PKF O'CONNOR DAVIES' Hauppauge office.

82.    The co-managing partners, Davoli and Ferreira, were Plaintiff's former partners at AVZ and also became Plaintiff's partners with Defendants, PKF O'CONNOR DAVIES, through the PKF APA.

83.    From their time as partners at AVZ, PKF O'CONNOR DAVIES' partners, Davoli and Ferreira, were familiar with Plaintiff's medical condition of depression.

84.    Plaintiff's medical condition of depression was a serious medical condition that affected Plaintiff's ability to work, ability to take care of himself, as well as his ability to think, learn, and concentrate.

85.    Plaintiff's medical condition of depression is a long-term psychological impairment that substantially limited his ability to work and care for himself.

86.    Shortly after Plaintiff began working as a partner with Defendants, Plaintiff's major depressive disorder returned and again, began to affect his life, affecting both his well-being and his ability to work and care for himself.

87.    On or about May 7, 2021, Plaintiff was unable to go to work because of his medical condition.

88.    On or about May 10, 2021, Plaintiff advised Defendant PKF O'CONNOR DAVIES that his doctor advised him to take an immediate leave of absence from work due to his medical condition.

89.    Plaintiff's deteriorating medical condition was unexpected.

90.    Plaintiff contacted Defendants as soon as possible regarding his need for a FMLA leave of absence.

**C.  Defendants Approve Plaintiff's FMLA Leave of Absence**

91.    Defendants benefits company, UNUM, approved a FMLA leave of absence for Plaintiff for the dates: May 7, 2021 through August 2, 2021.

92.    Given the grandfather provision of the PKF APA, Plaintiff worked at least 1,250 hours during the twelve (12) months preceding Plaintiff's request for FMLA leave.

93.    Plaintiff suffered from a serious medical condition.

94.    Plaintiff's serious medical condition diagnosed as "major depressive disorder" prevented Plaintiff from working for Defendants during his FMLA leave.

95.    While on FMLA leave, Plaintiff was not able to check his work email.

96.    Despite Plaintiff being assigned to a FMLA leave of absence, Defendants attempted to contact Plaintiff on several occasions by email and telephone.

97.    Specifically, Defendants allegedly attempted to email Plaintiff on June 18, 2021, to send him the proposed Amended and Restated Partnership Agreement.

98.    Defendants hold it against Plaintiff that he was not checking his work email while on an approved FMLA leave.

99.     Defendants attempted to contact Plaintiff during his FMLA leave to work on client matters that he was forced to leave incomplete when he took the unexpected leave of absence.

100.    Sometime in late May 2021 or early June 2021, Plaintiff speaks with Defendant FREIRE, who expressed his and Defendant KEANE's "disappointment" that Plaintiff did not call them directly regarding his medical condition.

101.    While on FMLA leave, Defendants contact Plaintiff and request that he fill out billing sheets for his work time from before his FMLA leave of absence.

102.    On or about June 29, 2021, during Plaintiff's FMLA leave, Defendants threaten to withhold Plaintiff's pay during his FMLA leave of absence.

103.    On or about July 15, 2021, Defendants begin to withhold Plaintiff's pay during his FMLA leave of absence.

104.    Defendants withhold Plaintiff's pay in the amount of approximately $31,127.50 during his FMLA leave of absence until approximately September 10, 2021.

105.    Defendants' withholding of pay constitutes interference with Plaintiff's FMLA leave of absence which caused Plaintiff additional stress and exacerbated his depression because Plaintiff was unable to pay his bills.

106.    During Plaintiff's FMLA leave, Defendants attempted to contact Plaintiff despite the fact that he was on an approved leave of absence.

107.    During Plaintiff's FMLA leave, Defendants sent many emails to Plaintiff that he did not receive due to the effect that his disability was having on his ability to function.

108.    It is Plaintiff's belief that, in some cases, Defendants did not service Plaintiff's clients while he was out on the approved FMLA leave of absence, and in other cases, Defendants serviced Plaintiff's clients' poorly.

109.   Plaintiff is aware of one client that Defendants would not service while he was on FMLA leave, and that client decided to stop doing business with Defendants.

110.   It is Plaintiff's belief that Defendants were unhappy with Plaintiff's need for FMLA leave during the busy tax season.

111.   On or about August 3, 2021, Plaintiff provides Defendants with a doctor's note stating that he is fit to return to work.  Attached as Exhibit "D" is a copy of the note.

112.   Plaintiff returned to work following his FMLA leave of absence on or about August 4, 2021.

### D.  Defendants Terminate Plaintiff.

113.   Upon Plaintiff's return to work with Defendants, Defendants treated Plaintiff differently than similarly situated employees.

114.   It is Plaintiff's belief that Defendants began to criticize Plaintiff's billing practices when he returned from FMLA leave in retaliation for Plaintiff taking FMLA leave during the busy tax season.

115.   It is Plaintiff's belief that Defendants attempted to identify a billing practice problem in retaliation for Plaintiff's need to take FMLA leave.

116.   It is also Plaintiff's belief that Defendants attempt to identify a billing practice problem is a mere pretext for the termination of Plaintiff's employment because other similarly situated partners were not terminated for similar billing practices.

117.   Plaintiff was unexpectedly terminated on September 30, 2021, less than two months after he returned from the approved FMLA leave.

118.   After Plaintiff's termination, Defendants failed to pay Plaintiff his final paycheck of $10,833, which represented his final payment for the second half of the month of September.

119.    After Plaintiff's termination, Defendants also failed to pay Plaintiff the money that Defendants withheld for the months of January 2021 through September 2021, in the amount of $48,750 which represents the annual holdback amount of $65,000 multiplied by 9/12 for 9 months worked out of the year.

120.    Defendants also refused to pay this final money owed to Plaintiff when they attempted to require Plaintiff to sign a severance agreement and general release in return for payment of these monies.

121.    Upon information and belief, Plaintiff believes that Defendants' partners did not meet to consider the termination of his partnership with the firm.

122.    Upon information and belief, Plaintiff believes that Defendants' partners did not vote to terminate Plaintiff's partnership with the firm.

123.    Upon information and belief, Defendants unilaterally decided to terminate Plaintiff and deny him his partnership rights.

124.    Plaintiff was duly qualified for the position of Partner in an accounting firm.

125.    During his employment with Defendant PKF O'CONNOR DAVIES, there were no negative performance evaluations in Plaintiff's record.

126.    For the time that Plaintiff worked for AVZ, the previous accounting firm, Plaintiff's annual reviews were all positive — indicating that Plaintiff was meeting the required metrics for partnership.

127.    Defendants have no documentation to support any allegations that they were ever dissatisfied with Plaintiff's work.

128.    Defendants' alleged concerns with Plaintiff's billing practice is not enough to establish a justifiable reason to terminate Plaintiff's employment.

## STATEMENT OF CLAIMS

### COUNT I – FIRST CLAIM FOR RELIEF
**(Family Medical Leave Act "FMLA", 29 U.S.C. § 2615(a)(1))**

129.    The foregoing paragraphs are realleged and incorporated by reference herein.

130.    Plaintiff is an "eligible employee" under FMLA.

131.    Defendants constitute the "employer" as defined by FMLA.

132.    Plaintiff was entitled to take a leave of absence pursuant to FMLA from May through August 2021.

133.    Plaintiff gave Defendants notice of his intention to take a leave of absence on or about May 10, 2021.

134.    Defendants did permit Plaintiff to take a FMLA leave of absence from May 7, 2021 through August 3, 2021.

135.    Defendants denied Plaintiff benefits that he was entitled to under FMLA.

136.    Specifically, Defendants interfered with Plaintiff's FMLA leave when they contacted Plaintiff by email and telephone asking Plaintiff to perform work during his FMLA leave.

137.    During Plaintiff's FMLA leave, Defendants attempted to contact Plaintiff for some of the following reasons:

a.    On June 18, 2021, Defendants email Plaintiff with a proposed Partnership Agreement to review;

b.    In June 2021, Defendant FREIRE contacted Plaintiff and told him that he was disappointed that Plaintiff did not speak directly to him or Defendant KEANE about his medical condition;

     c.     On July 1, 2021, Defendants email Plaintiff with a Harassment Training to be completed by July 23, 2021;

     d.     In June and July 2021, Defendants attempted to reach out to Plaintiff regarding getting his billing sheets in;

     e.     In June 2021, Defendants texted Plaintiff requesting that he complete his WIP, which stands for "Work in Process" billing, by July 15, 2021; and

     f.     Defendants withheld Plaintiff's draw payments for July and August 2021, in the amount of $31,127.50.

138.    Defendants also interfered with Plaintiff's FMLA leave when they withheld his pay during the FMLA leave of absence and refused to pay Plaintiff until months later in September 2021.

139.    Defendants' interference with Plaintiff's FMLA leave constitutes "willful" actions by Defendants in direct contravention to Plaintiff's legal FMLA rights.

140.    Defendants knew that they should not have withheld Plaintiff's pay during the pendency of his FMLA leave.

141.    As a proximate result of Defendants' FMLA interference, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

## COUNT II – SECOND CLAIM FOR RELIEF
### (Family Medical Leave Act "FMLA", 29 U.S.C. § 2615(a)(2))

142.    The foregoing paragraphs are realleged and incorporated by reference herein.

143.    Plaintiff exercised his rights protected under FMLA.

144.    Plaintiff was qualified for the position of partner with Defendants.

145.    Defendants terminated Plaintiff less than two months after Plaintiff returned from an approved FMLA leave of absence.

146.    Defendants also refused to acknowledge Plaintiff's established employment benefits as a partner with Defendant PKF O'CONNOR DAVIES, including but not limited to his "equity units," his defined retirement benefits, and payment for his capital account, which should have been paid to Plaintiff when he stopped working for Defendants.

147.    Defendants' refusal to acknowledge that Plaintiff, as an AVZ equity partner, was entitled to established partnership benefits as set forth in the PKF APA gives rise to circumstances that establish the inference of retaliatory intent.

148.    Another example of retaliatory intent is that Defendants sent his proposed Partnership Agreement while Plaintiff was on FMLA leave and thereafter denied Plaintiff his partnership benefits.

149.    In addition, after Plaintiff returned to work following the FMLA leave, Plaintiff requested a copy of the Partnership Agreement on August 24, 2021; and Defendants did not send Plaintiff a copy of the requested agreement until September 27, 2021, three days before Plaintiff's termination.

150.    Defendant FREIRE expressed in a phone conversation that he was disappointed in Plaintiff's lack of communication with him during Plaintiff's FMLA leave.

151.    The circumstances of Defendants' decision to terminate Plaintiff's employment establish the inference of retaliatory intent.

152.   Defendants decided to terminate Plaintiff's employment because he unexpectedly had to take a FMLA leave of absence during tax season and Defendants were unhappy that Plaintiff did not speak to them directly about his medical condition.

153.   Furthermore, Defendants withholding of Plaintiff's pay constitutes retaliation for taking a FMLA leave of absence.

154.   Defendants' termination of Plaintiff's employment and retaliation for taking FMLA leave constitute "willful" actions by Defendants in direct contravention to Plaintiff's legal FMLA rights.

155.   Defendants knew that they should not have withheld Plaintiff's pay during the pendency of his FMLA leave.

156.   Defendants also knew that Plaintiff was entitled to equity benefits pursuant to the PKF APA, but refused to provide said benefits to Plaintiff.

157.   As a proximate result of Defendants' FMLA retaliation, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

### COUNT III – THIRD CLAIM FOR RELIEF
**(Family Medical Leave Act "FMLA", 29 U.S.C. § 2611))**

158.   The foregoing paragraphs are realleged and incorporated by reference herein.

159.   Defendant FREIRE is the Chief Operating Officer of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive board.

160.   Defendant FREIRE is an employer under the FMLA because he is a person who acts in the interest of Plaintiff's employer, Defendant, PKF O'CONNOR DAVIES.

161.    Defendant KEANE is the Managing Partner of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive committee.

162.    Defendant KEANE is an employer under the FMLA because he is a person who acts in the interest of Plaintiff's employer, Defendant, PKF O'CONNOR DAVIES.

163.    Defendants participated in the decision to terminate Plaintiff on September 30, 2021.

164.    Defendants participated in the conduct giving rise to Defendants' interference with Plaintiff's FMLA rights.

165.    Defendants participated in the conduct giving rise to Defendants' retaliation against Plaintiff for utilizing a FMLA leave of absence.

166.    Pursuant to 29 U.S.C. §§ 2611 and 2615, Defendants are individually liable for Defendants' violation of Plaintiff's FMLA rights.

167.    Defendants' termination of Plaintiff's employment; retaliation against Plaintiff for taking FMLA leave; and interference with Plaintiff's FMLA leave, constitute "willful" actions by Defendants in direct contravention to Plaintiff's legal FMLA rights.

168.    As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

### COUNT IV – FOURTH CLAIM FOR RELIEF
### (American with Disabilities Act, as amended ("ADAAA") 42 U.S.C. § 12101 *et seq.*)

169.    The foregoing paragraphs are realleged and incorporated by reference herein.

170.    Plaintiff was disabled within the meaning of the ADAAA.

171.    Plaintiff's documented condition of "major depressive disorder" constitutes a disability within the meaning of the ADAAA.

172.    Plaintiff's major depressive disorder affected Plaintiff's major life activities of being able to work, being able to care for oneself, as well as affecting Plaintiff's ability to think, learn and concentrate.

173.    Defendants are a "covered" employer pursuant to 42 U.S.C. § 12111(5)(A) of the ADAAA.

174.    Plaintiff was a "qualified employee" pursuant to 42 U.S.C. § 12111(8) of the ADAAA.

175.    Plaintiff could perform the essential functions of his job as an accounting partner with Defendants.

176.    Plaintiff performed his job duties satisfactorily while employed with Defendants.

177.    Plaintiff was regarded and known by Defendants to have an actual, and recorded, physiological impairment that was permanent in nature and that substantially limited Plaintiff in several major life activities, including but not limited to being able to work, being able to care for oneself, as well as affecting Plaintiff's ability to think, learn and concentrate.

178.    Defendants also unlawfully discriminated against Plaintiff because he was regarded as and/or known to be actually and recorded as disabled by Defendants pursuant to the definitions provided in the ADAAA.

179.    Plaintiff suffered an adverse employment action, specifically, Defendants terminated Plaintiff's employment, as well as improperly withheld salary and benefits that are owed to him.

180.    Additionally, Plaintiff suffered an adverse employment action when Defendants denied Plaintiff his partnership benefits and treated him differently than the rest of Defendants' partners because of Plaintiff's disability and because Defendants regarded him as disabled.

181.    Plaintiff also suffered the adverse employment action of having his salary withheld while on FMLA leave during July and August 2021, and treated him differently than the rest of Defendants' partners because of Plaintiff's disability and because Defendants regarded him as disabled.

182.    Defendants terminated Plaintiff's employment because of his disability and thereby violated his rights to equal employment opportunity as protected by the ADAAA.

183.    Defendants' conduct as alleged above constitutes discrimination based on Disability in violation of the ADAAA.

184.    The stated reasons for Defendants' termination of Plaintiff's employment were not the true reasons, but instead were pretextual intended to hide Defendants' discriminatory animus.

185.    Defendants' termination of Plaintiff's employment was a willful violation.

186.    Defendants knew that Plaintiff had returned from a FMLA leave because of a disability affecting Plaintiff's ability to work.

187.    Defendants also knew that Plaintiff's condition was severe; and regarded Plaintiff as having the disability of depression when Defendants granted Plaintiff FMLA leave for his own serious medical condition.

188.    Upon Plaintiff's return to work in August 2021, Defendants disregarded their knowledge that Plaintiff was suffering from a severe medical condition that constitutes a disability under the ADAAA.

189.    As a consequence of Defendants' willful and unlawful discriminatory acts, all of which were undertaken with a conscious disregard of Plaintiff's rights as delineated above, Plaintiff suffered damages in an amount to be determined at trial, including back pay, front pay, and liquidated damages to the extent permitted by statute.

190.    As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

191.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and other emotional pain and suffering.

192.    Defendants' unlawful actions constitute malicious, willful and wanton violations of the ADAAA.

**COUNT V – FIFTH CLAIM FOR RELIEF**
**(Discrimination in Violation of the New York State Human Rights Law § 296)**

193.    The foregoing paragraphs are realleged and incorporated by reference herein.

194.    Plaintiff is a member of a protected class of individuals due to his documented disability while employed with Defendants.

195.    Plaintiff was qualified for his position during his employment with Defendants.

196.    Plaintiff performed his job duties satisfactorily while employed with Defendants.

197.    Plaintiff suffered an adverse employment action, specifically, Defendants terminated Plaintiff's employment.

198.    Plaintiff suffered an adverse employment action also when Defendants refused to pay Plaintiff while he was on FMLA leave and withheld his salary until September 10, 2021.

199.    Plaintiff suffered an adverse employment action when Defendants refused to acknowledge that Plaintiff had an equity interest in the firm.

200.    Defendants terminated Plaintiff's employment, and treated him differently than the other partners, because of his disability and thereby violated his rights to equal employment opportunity as protected by the NYSHRL.

201.    Defendants' conduct included, among other things, the following:

    a.    Improper withholding of Plaintiff's salary during the year 2021;

    b.    Improper discriminatory comments predicated on Plaintiff's disability by Defendant FREIRE;

    c.    Improper expectation that Plaintiff would be checking his emails while on FMLA leave when sending the proposed Partnership Agreement and refusing to confer partnership benefits on Plaintiff when he didn't check his emails at that time; and

    d.    Terminating Plaintiff's employment while falsely claiming the termination of a 36-year employee was due to the Plaintiff's *de minimus* alternate billing practices.

202.    Defendants' conduct as alleged above constitutes discrimination based on disability in violation of the NYSHRL.

203.    As a consequence of Defendants' willful and unlawful discriminatory acts, Plaintiff suffered damages in an amount to be determined at trial, including back pay, front pay, punitive damages and liquidated damages to the extent permitted by statute.

204.    As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

205.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and other emotional pain and suffering.

206.    Defendants' unlawful actions constitute malicious, willful and wanton violations of the NYSHRL.

## COUNT VI – SIXTH CLAIM FOR RELIEF
### (Discrimination in Violation of the NYCHRL, Administrative Code of City of New York § 8-107)

207.    The foregoing paragraphs are realleged and incorporated by reference herein.

208.    Plaintiff is a member of the protected class of individuals who have a disability while employed with Defendants.

209.    Plaintiff was qualified for his position during his employment with Defendants.

210.    Plaintiff performed his job duties satisfactorily while employed with Defendants.

211.    Plaintiff suffered an adverse employment action, specifically, Defendants terminated Plaintiff's employment.

212.    Defendants terminated Plaintiff's employment because of his disability and thereby violated his rights to equal employment opportunity as protected by the NYCHRL.

213.    Defendants' conduct included, among other things, the following:

    a.    Improper withholding of Plaintiff's salary during the year 2021;

b.   Improper discriminatory comments predicated on Plaintiff's disability by Defendant FREIRE;

c.   Improper expectation that Plaintiff would be checking his emails while on FMLA leave when sending the proposed Partnership Agreement and refusing to confer partnership benefits on Plaintiff when he didn't check his emails at that time; and

d.   Terminating Plaintiff's employment while falsely claiming the termination of a 36-year employee was due to the Plaintiff's *de minimus* alternate billing practices.

214.   Defendants' conduct as alleged above constitutes discrimination based on disability in violation of the NYCHRL.

215.   As a consequence of Defendants' willful and unlawful discriminatory acts, all of which were undertaken with a conscious disregard of Plaintiff's rights as delineated above, Plaintiff suffered damages, and continues to suffer, in an amount to be determined at trial, including back pay, front pay, compensatory and punitive damages to the extent permitted by statute.

216.   As a proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

217.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, injury, pain, ailments and conditions, as well as mental anguish

and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and other emotional pain and suffering.

218.    Defendants' unlawful actions constitute malicious, willful and wanton violations of the New York City Law, NYCHRL.

## COUNT VII – SEVENTH CLAIM FOR RELIEF
## (NYSHRL individual liability 296(1))

219.    The foregoing paragraphs are realleged and incorporated by reference herein.

220.    Defendant FREIRE is the Chief Operating Officer of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive board.

221.    Defendant KEANE is the Managing Partner of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive committee.

222.    Defendants FREIRE and KEANE were involved in the promotion, demotion, hiring and firing of individuals that work for Defendant PKF O'CONNOR DAVIES.

223.    Defendants FREIRE and KEANE, as partners at Defendant PKF O'CONNOR DAVIES, have an ownership interest in Defendants' firm and constitute an employer under the NYSHRL.

224.    Defendants FREIRE and KEANE participated in the decision to terminate Plaintiff on September 30, 2021.

225.    Defendants', FREIRE and KEANE, actions constitute discrimination because of Plaintiff's disability.

226.    Defendants FREIRE and KEANE participated in the conduct giving rise to Defendants' retaliation against Plaintiff for utilizing a FMLA leave of absence because of Plaintiff's unexpected disability.

227.    Pursuant to New York Executive Law section 296(1), Defendants FREIRE and KEANE are each individually liable for discrimination against Plaintiff because each Defendant has an ownership interest and/or because each Defendant has the authority to hire and fire the Plaintiff.

228.    As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

**COUNT VIII – EIGHTH CLAIM FOR RELIEF**
**(NYSHRL individual liability 296(6))**

229.    The foregoing paragraphs are realleged and incorporated by reference herein.

230.    Defendant FREIRE is the Chief Operating Officer of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive board.

231.    Defendant KEANE is the Managing Partner of Defendant PKF O'CONNOR DAVIES and a member of the firm's executive committee.

232.    Defendants FREIRE and KEANE were involved in the promotion, demotion, hiring and firing of individuals that work for Defendant PKF O'CONNOR DAVIES.

233.    Defendants FREIRE and KEANE were Plaintiff's supervisors when he worked for Defendant PKF O'CONNOR DAVIES.

234.    Defendants FREIRE and KEANE were each a participant in the termination of Plaintiff on September 30, 2021.

235.    Defendants FREIRE and KEANE participated in the conduct giving rise to the discrimination suffered by Plaintiff and set forth herein.

236.    Defendants FREIRE and KEANE were involved in the discriminatory scheme to terminate Plaintiff, a partner with the firm who was suffering from a documented disability.

237.    Pursuant to New York Executive Law section 296(6), Defendants FREIRE and KEANE are each individually liable for discrimination against Plaintiff because each aided, abetted, incited, compelled and/or coerced Defendants' unlawful discrimination against Plaintiff.

238.    As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings, bonuses, other employment benefits, and other economic harm, all to Plaintiff's measure of damages in an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

## COUNT IX – NINTH CLAIM FOR RELIEF
### (N.Y. Labor Law Section 198 Unpaid Wages)

239.    The foregoing paragraphs are realleged and incorporated by reference herein.

240.    Plaintiff was employed by Defendant PKF O'CONNOR DAVIES from January 1, 2021 through September 30, 2021.

241.    As part of Plaintiff's compensation, Plaintiff was paid a biweekly salary as a partner of Defendant PKF O'CONNOR DAVIES.

242.    As of the date of his termination, Plaintiff is owed wages from Defendant PKF O'CONNOR DAVIES, which have not been paid, although duly demanded.

243.    Plaintiff's final paycheck due at the end of September 2021 was withheld and not paid to Plaintiff, amounting to approximately $10,833.

244.    During the time period January 2021 through September 2021, Defendant PKF O'CONNOR DAVIES withheld 25% of Plaintiff's salary, amounting to approximately $ 48,750.

245.    While Plaintiff cannot compute his damages with certainty without the benefit of reasonable discovery, those damages are believed to be, as of the date of this Complaint, approximately $ 59,583.

246.    Plaintiff has received no portion of the monies due and owing, though said wages have been duly demanded.

247.    Defendant PKF O'CONNOR DAVIES's refusal to pay Plaintiff the wages owed to him is being orchestrated by Defendants FREIRE AND KEANE.

248.    Defendant PKF O'CONNOR DAVIES's refusal to pay Plaintiff the wages owed to him is being orchestrated by Defendants FREIRE AND KEANE to punish him for taking an approved FMLA leave of absence during tax season to address his own severe medical condition.

249.    Defendants' PKF O'CONNOR DAVIES, FRIERE and KEANE's refusal to pay Plaintiff the wages owed is willful.

250.    Defendants' PKF O'CONNOR DAVIES, FRIERE and KEANE's refusal to pay Plaintiff the wages owed is malicious.

251.    Defendant PKF O'CONNOR DAVIES are in violation of New York Labor Law Section 198.

252.    Plaintiff is entitled to liquidated damages under the statute.

253.    Plaintiff is entitled to his reasonable attorney's fees.

254.    By virtue of the foregoing, Plaintiff is entitled to recover from Defendants an amount to be determined at trial, but in no event less than One Hundred Fourteen Thousand Dollars ($112,000), plus attorney's fees and interest.

## COUNT X – TENTH CLAIM FOR RELIEF
### (NY Accounting of Partnership Profits, N.Y. Partnership Law § 44)

255.     The foregoing paragraphs are realleged and incorporated by reference herein.

256.     Defendants are in the sole and exclusive possession of all accounts, books, financials, and records of PKF O'CONNOR DAVIES' accounting and consulting business.

257.     Defendants have received a substantial sum of money and intangible benefits from the acquisition of AVZ through the PKF APA, that Plaintiff is partially entitled to.

258.     That upon information and belief, by reason of Defendants' termination of Plaintiff's employment, Defendants have realized substantial sums of money, which is rightfully due to the Plaintiff.

259.     As set forth herein, Plaintiff was a partner within Defendants' business, and was wrongfully excluded from the business when he was terminated by Defendants.

260.     Defendants improperly removed Plaintiff from his status as an Equity Partner with Defendants effective September 30, 2021.

261.     Given Defendants' improper exclusion of Plaintiff from the partnership, it is just and reasonable to require an accounting.

262.     That Plaintiff has duly demanded that Defendants account for the monies unlawfully and wrongfully withheld from him, but Defendants have failed and refused to render such an accounting and failed and refused to pay over to Plaintiff the monies which are rightfully due to Plaintiff.

263.     That the Defendants must render to Plaintiff a just and full accounting of all monies taken, received, and disbursed by Defendants in connection with their accounting and consulting business.

264.    By virtue of the foregoing, Plaintiff is entitled to recover from Defendants an amount to be determined at trial, but in no event less than Four Million Dollars ($4,000,000).

## COUNT XI – ELEVENTH CLAIM FOR RELIEF
### (NY State Breach of Contract)

265.    The foregoing paragraphs are realleged and incorporated by reference herein.

266.    Plaintiff and Defendants entered into a written agreement concerning the asset purchase of the former accounting firm AVZ, wherein Plaintiff was listed as an "AVZ Equity Partner."  Attached as Exhibit "B" is a copy of the PKF APA.

267.    The PKF APA was executed by all parties, including Plaintiff, on or about August 19, 2020.

268.    In accordance with the terms of the PKF APA, Plaintiff, along with all other AVZ Equity partners, began working as a partner in Defendants' accounting firm on January 1, 2021.

269.    In accordance with the terms of the PKF APA, Defendants obtained the former AVZ's assets and clients.

270.    Pursuant to the terms of the PKC APA, all AVZ Equity partners would have their years of service at AVZ grandfathered into their employment relationship with Defendants.

271.    Pursuant to the terms of the PKC APA, Plaintiff would be paid an annual salary as a partner with Defendant PKF O'CONNOR DAVIES.

272.    Pursuant to the terms of the PKC APA, Plaintiff was entitled to a certain number of "equity units" in Defendants partnership.

273.    Pursuant to the terms of the PKC APA, Defendants maintained a capital account in connection with Plaintiff's partnership interest, as part of the compensation package provided by Defendant PKF O'CONNOR DAVIES.

274.    Pursuant to the terms of the PKC APA, Plaintiff was entitled to a return of capital funds held by Defendants.

275.    Pursuant to the terms of the PKC APA, Plaintiff was entitled to a defined retirement plan.

276.    Plaintiff has received no portion of the monies due and owing.

277.    Defendants have breached their agreements as set forth in the PKC APA.

278.    As a result of Defendants' breach of contract, Plaintiff has been damaged in an unknown amount including owed "equity units," owed "capital accounts," an owed defined "retirement plan," and unpaid salary for the year 2021.

279.    As a result of Defendants' breach of contract, Plaintiff has been damaged in the amount of approximately Four Million Dollars ($4,000,000), together with attorneys' fees, costs and interest.

## COUNT XII – TWELFTH CLAIM FOR RELIEF
### (NY Breach of Fiduciary Duties, N.Y. Partnership Law § 43)

280.    The foregoing paragraphs are realleged and incorporated by reference herein.

281.    Defendants, being a limited liability partnership, owed a fiduciary duty to Plaintiff, a partner within the partnership.

282.    Defendants FREIRE and KEANE owed Plaintiff the fiduciary duties of good faith, fairness and loyalty.

283.    All of Defendant PKF O'CONNOR DAVIES' partners owed Plaintiff the fiduciary duties of good faith, fairness, and loyalty.

284.    Defendants breached their fiduciary duties when they terminated Plaintiff from the partnership and failed to compensate him in accordance with the terms of the PKF APA.

285.    Defendants breach caused Plaintiff damages as set forth herein, including but not limited to, loss of "equity units" in the partnership without compensation, loss of the deferred compensation retirement plan, loss of Plaintiff's capital account, and loss of salary.

286.    Plaintiff's losses are the direct result of Defendants' breach of their fiduciary duties to Plaintiff.

287.    As a result of Defendants' breach of fiduciary duties, Plaintiff has been damaged in the amount of approximately Four Million Dollars ($4,000,000), together with attorneys' fees, costs and interest.

## COUNT XIII – THIRTEENTH CLAIM FOR RELIEF
### (NY equitable estoppel/unjust enrichment)

288.    The foregoing paragraphs are realleged and incorporated by reference herein.

289.    Plaintiff has a right to recover from Defendants based on Defendants' unjust enrichment resulting from the actions of Defendants described in this complaint.

290.    That, as a result of the foregoing, the Defendants have been unjustly enriched by Plaintiff's equity contribution when Defendants purchased the assets of AVZ, terminated Plaintiff, and kept Plaintiff's clients as their own.

291.    Defendants knowingly benefitted from its false promises to Plaintiff of a payment for his "equity account," defined retirement benefit, a return of the capital account, and payment of salary owed.

292.    Defendants knowingly benefitted from the asset purchase of AVZ, assuming Plaintiff's clients into Defendants business, despite never paying Plaintiff for such benefit.

293.    Upon information and belief, Defendants have economically benefitted and been unjustly enriched by virtue of the aforesaid actions.

294.    Plaintiff has no adequate remedy of law.

295.    Plaintiff requests that an equitable lien in the amount of Plaintiff's "equity interest" be impressed upon Defendants' property.

296.    As a result of Defendants' unjust enrichment, Plaintiff has been damaged in the amount of approximately Four Million Dollars ($4,000,000), together with attorneys' fees, costs and interest.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, CHARLES M. MATTERN, respectfully requests the Court to enter judgment in his favor and against Defendants, PKF O'CONNOR DAVIES, LLP, HENRY A. FREIRE, in his individual capacity, and KEVIN J. KEANE, in his individual capacity, and to award him the following relief:

(a)    a declaratory judgment that the actions of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

(b)    an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

(c)    an Order for Defendants to return Plaintiff to his former position of employment with Defendants;

(d)    an Order creating an equitable lien in the amount of Plaintiff's "equity interest" impressed upon Defendants' property;

(e)    an award of damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to back pay, front pay, and all related fringe benefits;

(f)    an award of damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

(g)    an award of damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages;

(h)    an award of punitive damages in an amount to be determined at trial;

(i)    an award of liquidated damages in an amount to be determined at trial;

(j)    an award of reasonable counsel fees and costs with interest to compensate Plaintiff for having to prosecute this action against Defendants; and

(k)    such other legal and equitable relief that may be just and proper given the circumstances.

## JURY DEMAND

Plaintiff, CHARLES M. MATTERN, demands a trial by jury on all issues in this action that are triable by law.

Dated:        September 28, 2023
              Hauppauge, New York

Respectfully Submitted,

*Colleen F. Dowd*
Richard T. Cordano, Esquire
Colleen F. Dowd, Esquire
RUSSO, KARL, WIDMAIER & CORDANO, PLLC
Attorneys for Plaintiff, CHARLES M. MATTERN
400 Town Line Road
Hauppauge, New York 11788
Telephone: 631-265-7200
Email: rtc@rkwclaw.com

# EXHIBIT A

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Charles Mattern** | From: | **New York District Office** |
|---|---|---|---|
| | **c/o Russo Karl Widmaier & Cordano PLLC** | | **33 Whitehall St, 5th Floor** |
| | **400 Tom Line Rd., Ste. 170** | | **New York, NY 10004** |
| | **Hauppauge, NY 11788** | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2022-07821** | **ANDREA MACANCELA,** Investigator | **9295065351** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By:Timothy Riera
09/21/2023

Enclosures(s)

**Timothy Riera**
**Acting District Director**

cc: **Nancy  Wright**
**Wilson Elser Moskowitz Edelman & Dicker LLP**
**150 E 42ND ST FL 23**
**New York, NY 10017**

**Colleen F Dowd**
**Russo Karl Widmaier & Cordano PLLC, Attorneys at Law**
**400 Town Line Road Ste. 170**
**Hauppauge, NY 11788**

Enclosure with EEOC
Form 161-B (01/2022)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# EXHIBIT B

ASSET PURCHASE AGREEMENT

By and Among

Albrecht, Viggiano, Zureck & Company, P.C.

Robert T. Quarte

Jeffrey S. Davoli,

Joseph Ferreira,

Charles M. Mattern

John Shillingsford

and

PKF O'Connor Davies, LLP

August ____, 2020

*2248075*

**ASSET PURCHASE AGREEMENT**

ASSET PURCHASE AGREEMENT, dated August____, 2020 (this "<u>Agreement</u>"), by and among PKF O'Connor Davies, LLP, a New York limited liability partnership ("<u>PKF</u>"), with its principal place of business located at 665 Fifth Avenue, New York, NY 10022, Albrecht, Viggiano, Zureck & Company, P.C., a New York professional corporation ("<u>AVZ</u>"), with its principal place of business located at 25 Suffolk Court, Hauppauge, New York 11788 and the following individuals: Robert T. Quarte (Quarte) (also referred to as the "AVZ Income Partner"), Jeffrey S. Davoli (Davoli), Joseph C. Ferreira (Ferreira), Charles M. Mattern (Mattern) and John Shillingsford (Shillingsford), (Davoli, Ferreira, Mattern and Shillingsford being collectively referred to as the "AVZ Equity Partners") (all parties to the Transaction collectively referred to as the "<u>Parties</u>").

**RECITALS**

WHEREAS, PKF is an accounting and consulting firm with offices in several states, which provides accounting, auditing, tax, management advisory, consulting and financial advisory services to its clients;

WHEREAS, AVZ is an accounting and consulting firm with its principal office in Hauppauge, New York, which provides accounting, auditing, tax, management advisory, consulting and financial advisory services to its clients;

WHEREAS, AVZ and PKF have determined that a business combination between them (the "<u>Transaction</u>") is in the best interests of their respective firms and, accordingly, have agreed to effect the Transaction on the terms and subject to the conditions set forth herein;

WHEREAS, the Transaction is to be effected by the transfer to PKF from AVZ of the Purchased AVZ Assets in consideration of the assumption by PKF of the Assumed AVZ Liabilities and the issuance (i) to each of the AVZ Equity Partners of an equity partnership interest in PKF and (ii) to the AVZ Income Partner of an income partnership interest in PKF;

WHEREAS, simultaneously with and on the closing of the Transaction, the PKF Equity Partners and the AVZ Equity Partners will execute and deliver the Amended and Restated Partnership Agreement and the AVZ Income Partner will execute an Income Partnership Agreement; and

WHEREAS, AVZ, the AVZ Equity Partners, the AVZ Income Partner and PKF desire to make certain representations, warranties and agreements in connection with the Transaction;

NOW, THEREFORE, in consideration of the foregoing, and of the representations, warranties, covenants and agreements contained herein, the Parties hereto hereby agree as follows:

**ARTICLE 1**
**CERTAIN DEFINITIONS**

1.1     <u>Definitions</u>.  All capitalized terms that are not defined herein shall have the meanings ascribed to them in the Amended and Restated Partnership Agreement.  As used in this Agreement, the following terms shall have the following definitions:

"Amended and Restated Partnership Agreement" means that certain Amended and Restated Partnership Agreement of PKF O'Connor Davies, LLP, including all exhibits and schedules thereto, a copy of which has been made available to the AVZ Equity Partners.

"Assumed AVZ Liabilities" means obligations of AVZ under those contracts listed on Schedule 1.1(a) hereto, but only to the extent they relate to the period after the Effective Date, and those liabilities listed on AVZ's balance sheet as of the Effective Date that were incurred in the ordinary course of business as well as accrued paid time off as of the Effective Date, but excluding any liability for Paycheck Protection Program loans.

"AVZ Balance Sheet Date" as determined in Section 4.6(a)(i).

"AVZ Benefit Plans" as determined in Section 4.10(a).

"AVZ Contracts" as determined in Section 4.14(a).

"AVZ Financial Statements" as determined in Section 4.6(a).

"AVZ Equity Partners" has the meaning in the preamble.

"AVZ Income Partner" means Quarte.

"AVZ Former Obligations" means the obligations of AVZ to former AVZ partners, employees or stockholders existing on the Closing Date, which are described on Schedule 1.1(b).

"AVZ IP Documents" as determined in Section 4.15(d).

"AVZ Personal Property" as determined in Section 4.11(c).

"AVZ Personal Property Leases" as determined in Section 4.11(c).

"AVZ Real Property" as determined in Section 4.11(a).

"AVZ Real Property Leases" as determined in Section 4.11(d).

"AVZ Retired Partners" as determined in Section 6.1(g).

"Bill of Sale, Assignment and Assumption Agreement" means the Bill of Sale, Assignment and Assumption substantially in the form attached hereto as Exhibit A.

"Books and Records" as determined in Section 3.9.

"Closing" as determined in Section 2.2.

"Closing Date" as determined in Section 2.2.

"COBRA" as determined in Section 4.10(j).

"Effective Date" means January 1, 2021.

2

"<u>Encumbrances</u>" means any security interest, pledge, hypothecation, mortgage, lien (including environmental and tax liens), violation, charge, lease, license, encumbrance, servient easement, adverse claim, reversion, reverter, preferential arrangement, restrictive covenant, condition or restriction of any kind, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership.

"<u>Equity Units</u>" means those units of ownership equity issued to and held by the PKF Equity Partners under the Amended and Restated Partnership Agreement.

"<u>PKF Former Partner Obligations</u>" means those obligations listed on Schedule 1.1(c).

"<u>Income Partner Earnings Agreement</u>" means the agreement between PKF and the Income Partner regarding earnings, compensation and retirement benefit.

"<u>Income Partnership Agreement</u>" means that certain Income Partnership Agreement of PKF O'Connor Davies, LLP, including all exhibits and schedules thereto, a copy of which has been made available to the AVZ Income Partner(s).

"<u>Intellectual Property</u>" means any or all of the following and all rights in, arising out of, or associated therewith:  (a) all United States, international and foreign registered patents and applications therefor and all underlying patent rights, reissues, divisions, renewals, extensions, provisionals, continuations and continuations-in-part thereof; (b) all inventions (whether patentable or not), ideas, processes, invention disclosures, improvements, trade secrets, proprietary information, know-how, technology, improvements, discoveries, technical data, customer lists, proprietary processes and formulae, all source and object code, algorithms, architectures, structures, display screens, layouts, development tools and all documentation and media constituting, describing or relating to the above, including, without limitation, manuals, memoranda and records; (c) all copyrights, copyrights registrations and applications therefor, copyrightable material including derivative works, revisions, transformations and adaptations, material that is subject to non-copyright disclosure protections, and all other works of authorship and designs (whether or not copyrightable), and all other rights corresponding thereto throughout the world; (d) all trade names, logos, trade dress, common law trademarks and service marks, trademark and service mark registrations and applications therefor throughout the world; (e) domain names; (f) web sites and related content; (g) intellectual property rights acquired by license or agreement, including, without limitation, software (other than "click-wrap", "shrink-wrap" or other "off the shelf" software); (h) damages or benefits derived from any action arising out of or related to the foregoing, including laws controlling computer and Internet rights; (i) all manuals, documentation and materials relating to the above; and (j) any equivalent rights to any of the foregoing anywhere in the world.

"<u>Laks Clients</u>" means all AVZ clients for which Ken Laks was designated as the responsible partner on the AVZ WIP and AR reports at the time of his departure from AVZ.

"<u>Material Adverse Effect</u>" means a material adverse effect on the business, financial condition, assets, liabilities or results of operations of PKF or AVZ, as applicable, and their respective subsidiaries, taken as a whole, other than any such material adverse effect that affects (i) both PKF and AVZ in a substantially similar manner or (ii) certified public accounting firms generally.

"<u>PKF Balance Sheet Date</u>" as determined in Section 3.6(a)(i).

"PKF Benefit Plans" as determined in Section 3.10(a).

"PKF Contracts" as determined in Section 3.12.

"PKF Equity Partners" means any person who is a "partner" or "active partner" of PKF (as defined in the PKF O'Connor Davies Partnership Agreement), but not an income partner.

"PKF Financial Statements" as determined in Section 3.6(a).

"PKF Personal Property" as determined in Section 3.11(b).

"PKF Personal Property Lease" as determined in Section 3.11(b).

"PKF Real Property" as determined in Section 3.11(c).

"Posner Clients" as determined in Section 6.1(g).

"Purchased AVZ Assets" means all assets of AVZ wherever located existing as of the Effective Date of every kind and nature, including, without limitation, all goodwill, cash, Receivables, work in process, equipment, customer lists, etc., excluding the clients formerly served by Robert Posner ("Posner") to the extent (i) they do not remain clients of PKF after the Closing and (ii) Posner has fully compensated AVZ and/or PKF for said clients. Purchased AVZ assets shall also include the benefit of any and all non-solicitation and non-competition contracts and obligations of current, retired and former partners and employees of AVZ, including without limitation Posner.

"Receivables" means any and all billed accounts receivable, notes and other amounts receivable from third parties, including clients and employees, arising from the conduct of the business before the Closing, whether or not in the ordinary course, together with any unpaid financing charges accrued thereon.

"Transaction" has the meaning specified in the Recitals.

## ARTICLE 2
## THE TRANSACTION

2.1     The Transaction.

(a)  Subject to the terms and conditions of this Agreement, at the Closing:

(i)      AVZ shall transfer, assign, convey and deliver to PKF free and clear of all Encumbrances, all of the Purchased AVZ Assets, and PKF shall assume and accept all of the Purchased AVZ Assets from AVZ, all pursuant to the execution and delivery of the Bill of Sale, Assignment and Assumption Agreement.

(ii)     As consideration for the Purchased AVZ Assets and other covenants and obligations contained in this Agreement and the other agreements and documents referred to herein, (A) PKF shall assume the Assumed AVZ Liabilities, (B) the AVZ Equity Partners shall be granted an equity partnership interest in PKF in accordance with Section 2.5, (C) the AVZ Income Partner shall be granted an income partnership interest in PKF in accordance with Section 2.3(b), and (D) PKF shall make certain

payments to retired partners of AVZ as set forth in Section 6.1(g) below.  PKF will not assume any liabilities of AVZ other than the Assumed AVZ Liabilities.

     (iii) Each of the AVZ Equity Partners will be admitted as a PKF Equity Partner, subject to the terms of the Amended and Restated Partnership Agreement.  The AVZ Income Partner will be treated as an income partner, subject to the terms of the Income Partnership Agreement.

     (iv) AVZ and PKF shall deliver or cause to be delivered to each other the deliveries required by Sections 6.2 and 6.3 hereof, respectively.

   (b) In connection with the Transaction, the parties shall, at or following the Closing take such actions as may be reasonably required by the other party(ies) to effectuate the Transaction, including, without limitation, the execution by the AVZ Equity Partners of a counterpart signature page to the Amended and Restated Partnership Agreement in accordance with this Agreement, pursuant to which, among other things, each such person will acknowledge that he or she has (x) consented to the Transaction and (y) received and has read and understood, and agrees to be bound by and comply with the terms and conditions of, the Amended and Restated Partnership Agreement, in accordance with this Agreement.

   2.2 The Closing.  Subject to the terms and conditions of this Agreement, the closing of the transactions contemplated herein (the "Closing") shall take place electronically as soon as all conditions to Closing have been satisfied or waived (the "Closing Date").  For financial purposes and for purposes of Section 2.6, the effective date of the Transaction shall be January 1, 2021 ("Effective Date").  Public announcements will be made promptly after this Agreement is signed.

   2.3 Certain Post-Closing Matters.  Each of the following shall be effective as of the Effective Date:

   (a) Unless otherwise desired by AVZ, PKF shall make employment offers to all current employees of AVZ, subject to background checks and verification of professional credentials by PKF, at compensation levels and other terms of employment commensurate with the employees compensation with AVZ immediately prior to the Effective Date.  In addition, PKF will review the compensation and benefits of current AVZ employees to ensure they are commensurate with their PKF peers.

   (b) The AVZ Income Partner will become an income partner of PKF and will be paid at a rate equal to the overall compensation he earned at AVZ for the 2019 calendar year.  The AVZ Income Partner agrees to work for a minimum of one (1) year from the Closing Date but no sooner than January 1, 2022 to transition his clients to PKF.  Upon completion of said one (1) year of service, the AVZ Income Partner shall become eligible to receive a retirement value to be set forth in his Income Partner Earnings Agreement.

   (c) Except as otherwise provided in this Agreement, the Amended and Restated Partnership Agreement and/or the Income Partnership Agreement, the AVZ Equity Partners and the AVZ Income Partner shall be entitled to substantially the same benefits, policies and arrangements as they had previously received at AVZ prior to the Effective Date.

For example, the AVZ Equity Partners will participate in the retirement plan of PKF as set forth in the Amended and Restated Partnership Agreement, except as follows:

(i)      All AVZ Equity Partners will be grandfathered for their years of service to AVZ and in the case of Davoli and Shillingsford for their service to prior firms as set forth on Schedule 2.3(c)(i) , as it relates to the retirement calculation as specified in the Amended and Restated Partnership Agreement.

(ii)      AVZ Equity Partners will be required to commence their retirement after the completion of five (5) years of service following the Closing Date, or PKF's normal retirement age, whichever is later. However, AVZ Equity Partners may continue to provide current services and receive compensation from PKF under a mutually agreed arrangement to be negotiated at that time not to extend beyond the age of 70.

(iii)      Each of the AVZ Equity Partners will be eligible to receive a retirement payout in an amount of 2.75 times his average compensation for the best three (3) of the last six (6) years immediately prior to retirement (including compensation for any such years at AVZ, if applicable) to be paid over a ten (10) year period.  In addition, each of the AVZ Equity Partners will receive payments of their capital accounts as specified in the Amended and Restated Partnership Agreement and Section 2.4 below.

(iv)      All payments thereof are subject to the non-solicitation and non-competition terms of the Amended and Restated Partnership Agreement.

(d)      It is agreed that the staff and partners of AVZ will work out of the Hauppauge, NY location. PKF fully intends to add other PKF partners and staff to the Long Island Office to assure sound corporate governance and culture blending. PKF also reserves the right to transfer partners or staff to work out of this location based upon needs of PKF and space availability.

(e)      AVZ would designate a partner of the legacy firm to sit on the Administrative and Compensation Committees of PKF, which is the committee that runs the operations of PKF.

2.4      Capital Contribution.

(a)      Upon Closing, each of the AVZ Equity Partners will be required to contribute to PKF good capital (Receivables, work in process, cash and fixed assets) in an amount equal to his share of the required permanent (accrual) capital applicable to PKF Equity Partners generally.  In addition, the AVZ Equity Partners will have credited to their required permanent (accrual) capital any amounts paid to the AVZ retired partners during the period July 1, 2020 through December 31, 2020 that reduce the amount required to be paid by PKF pursuant to Section 6.1 (g) below. As of the Closing Date, PKF shall establish an Accrual Capital Account as provided in the Amended and Restated Partnership Agreement for each of the AVZ Equity Partners.  Any shortfall in required permanent (accrual) capital shall be made up during a reasonable period as determined by PKF, but in no event less than five (5) years from the Closing Date. Required permanent (accrual) capital shall be repaid to the AVZ Equity Partners over a four year

period following retirement.  Capital allocated to the AVZ Income Partner shall be repaid over a two year period commencing with his retirement from PKF. The Parties will discuss, in good faith, giving permanent (accrual) capital credit to the AVZ Equity Partners for the net proceeds of sale of AVZ.com if AVZ.com is sold within three (3) years after the Effective Date.

(b)    AVZ Equity Partners will be required to maintain cash capital ("Cash Capital") in an amount equal to ten percent (10%) of earnings.  The Cash Capital amount shall be repaid to the AVZ Equity Partner upon his retirement within twelve months of his last day of share ownership.  PKF has provided AVZ with a schedule of PKF's current obligations to retired partners.

2.5    Assignment of Equity Units and Compensation.

(a)    Equity participation of each of the AVZ Equity Partners shall be determined as follows:

Each of the AVZ Equity Partners will receive the number of PKF Equity Units that, when multiplied by Income Distributable by Percentage (defined below), equals the annual compensation he received for the 2019 calendar year. "Income Distributable by Percentage" shall mean the aggregate amount to be distributed to all equity partners of PKF (including the AVZ Equity Partners) for the year in question.  Such determination of the number of PKF Equity Units shall be estimated on the Closing Date and shall be finally determined as set forth in Section 2.6.  For purposes of this calculation, all PKF acquisitions that eventually close as of the January 1, 2021 shall be deemed to have closed immediately prior to this Transaction.  Furthermore, for the first calendar year following the Effective Date ("Guaranty Year"), each of the AVZ Equity Partners will be guaranteed not to earn less than the annual compensation he received for the 2019 calendar year, provided that the claw back provision as set forth in Section 2.6 below is not applicable.  In addition, during the Guaranty Year each AVZ Equity Partner will be eligible to receive a draw against expected earnings in accordance with PKF's practice generally.

(b)    Subject to 2.5(a), after the Closing Date, the Equity Units of PKF Equity Partners, including the AVZ Equity Partners, may be increased or decreased as provided in the Amended and Restated Partnership Agreement and as set forth below from time to time.

2.6    Post-Closing Adjustments.

(a)    Promptly after February 28, 2021, AVZ and the PKF Equity Partners shall submit to the other a statement as to actual 2020 net revenue per pre-existing firm for the year ended December 31, 2020, provided that the following shall be excluded:  any AVZ income for 2020 attributable to (i) the forgiveness of the Paycheck Protection Program, (ii) Posner Clients (as defined in Section 6.1(g) and (iii) Laks Clients. The estimated 2020 net revenue used in the initial Equity Unit Allocation calculations for the AVZ Equity Partners as of the Closing Date shall then be adjusted by re-computing the Equity Unit allocation using the actual 2020 net revenue amounts for the year ended December 31, 2020, provided that any AVZ income for 2020 attributable to Posner Clients, Laks Clients or to the forgiveness of the Paycheck Protection Program shall be excluded, and such allocation shall

**Albrecht, Viggiano, Zureck & Company, P.C.**

By:_____


_____

**Robert T. Quarte**


_____

**Jeffrey S. Davoli**


_____

**Joseph Ferreira**

_____

**Charles M. Mattern**


_____

**John Shillingsford**


**PKF O'Connor Davies, LLP**


By:_____

    **Kevin J. Keane, CPA**
    Managing Partner

**Exhibit A**
**Bill of Sale, Assignment and Assumption Agreement**
**(See Attached)**

**BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is made, executed and delivered as of January 1, 2021, by and between, Albrecht, Viggiano, Sureck & Company, P.C. ("AVZ") and Robert T. Quarte, Jeffrey S. Davoli, Joseph Ferreira, Charles M. Mattern, John Shillingsford ("AVZ Partners") and PKF O'Connor Davies, LLP ( "PKF").   AVZ, AVZ Partners and PKF are referred to collectively in this Bill of Sale, Assignment and Assumption Agreement as the "Parties". Capitalized terms used herein without definition shall have the meanings assigned to them in the Asset Purchase Agreement (as defined below).

W I T N E S S E T H :

WHEREAS, the Parties entered into an Asset Purchase Agreement dated as of August____, 2020 relating to the Transaction (the "Agreement"); and

WHEREAS, the Parties desire that AVZ and the AVZ Partners transfer, assign, convey and deliver the Purchased AVZ Assets to PKF; and

WHEREAS, this Bill of Sale, Assignment and Assumption Agreement ("Bill of Sale") is being entered into pursuant to Section 2.1 of the Agreement; and

NOW, THEREFORE, for good and valuable consideration and intending to be legally bound, the Parties hereto agree as follows:

Section 1.   In consideration of the assumption by PKF of the Assumed AVZ Liabilities and the issuance to Quarte of an income partnership interest in PKF and to Davoli, Ferreira, Mattern and Shillingsford of an equity partnership interest in PKF, the receipt and sufficiency of which is hereby acknowledged by the AVZ Partners, AVZ hereby sells, grants, assigns, transfers, conveys and delivers to PKF all right, title and interest of AVZ in and to the Purchased AVZ Assets.

Section 2.   AVZ and the AVZ Partners agree to cooperate with PKF to execute and deliver such other documents, instruments of transfer or assignment, files, books and records, and to do all further acts and things, as are reasonably necessary or requested to carry out the transactions contemplated under this Bill of Sale.

Section 3.   PKF hereby assumes, and becomes solely responsible for, all Assumed AVZ Liabilities.

Section 4.   This Bill of Sale shall be binding upon, and inure to the benefit of, the Parties and their respective successors, legal representatives and permitted assigns.  Nothing in this Assignment and Bill of Sale, expressed or implied, is intended to confer on any person other than the Parties and their respective successors, legal representatives and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Bill of Sale.

Section 5.   This Bill of Sale shall be governed by, and construed in all respects under, the laws of the State of New York without reference to its conflicts of laws principles.

̓

Section 6.   This Bill of Sale may be executed in several counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Bill of Sale as of the date first above written.

**PKF O'Connor Davies, LLP**

By: _____
    Kevin J. Keane, CPA
    Managing Partner


**Albrecht, Viggiano, Zureck, & Company, P.C.**

By: _____
    NAME
    TITLE


**AVZ Partners:**

_____

Robert T. Quarte


_____

Jeffrey S. Davoli


_____

Joseph Ferreira


_____

Charles M. Mattern


_____

John Shillingsford

34

**Schedule 2.3(c)(i)- AVZ Partner Years of Experience**



| AVZ Equity Partner Experience through 12/31/20 | | | | | |
|---|---|---|---|---|---|
| | Age | start w/ AVZ | yrs w/ AVZ | yrs w/ other firms | Total |
| ███ | ███ | ███ | ███ | ██ | ███ |
| ███ | | | | | |
| ███ | | | | | |
| ███ | | | ███ | ██ | |
| Mattern | 60 | May-84 | 36 | | 36 |

# EXHIBIT C

From: Henry A. Freire <HFreire@pkfod.com<mailto:HFreire@pkfod.com>>
Sent: Thursday, September 23, 2021 11:16 AM
To: Elena Greenberg <egreenberg@fglaw.net<mailto:egreenberg@fglaw.net>>; Jeffrey Davoli
<jdavoli@pkfod.com<mailto:jdavoli@pkfod.com>>; Joseph Ferreira
<jferreira@pkfod.com<mailto:jferreira@pkfod.com>>
Cc: Charles Mattern <cmattern@pkfod.com<mailto:cmattern@pkfod.com>>; John Shillingsford
<jshillingsford@pkfod.com<mailto:jshillingsford@pkfod.com>>; Robert Quarte
<rquarte@pkfod.com<mailto:rquarte@pkfod.com>>
Subject: Re: Charles Mattern partnership


Hi Elena:


The allocation of 1485 units to Charles is simple and dictated by the Business Combination
Agreement.  Charles 2019 earnings from AVZ PC provided to us $260,000, PKF LLP's unit earnings from
2020 was approx. $175 per unit.  $260,000/ $175 = 1485.  These units are subject to the claw back
provisions as outlined in the agreement.  Article 2.3 (c) (ii) also requires his continuation for 5 years and
also imposes non-solicitation and non-competition obligations.  Please refer to the Partnership
Agreement and Business Combination agreement for Charles continuing obligations as a Partner.


Regards


Henry

---------------------------------------------------------------

Henry A. Freire, CPA

Partner

PKF O'Connor Davies, LLP

Know Greater Value®

500 Mamaroneck Avenue, Suite 301,

Harrison, NY, 10528

T: 212.867.8000| F: 212.687.4346|

D: 646.699.2847| M: 631.258.5945

HFreire@pkfod.com<mailto:HFreire@pkfod.com>|

www.pkfod.com<https://www.pkfod.com/>

[cid:image001.jpg@01D7D000.11E5F6E0]

[cid:image002.png@01D7D000.11E5F6E0]


*****************************************************************************

The information in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this e-mail message in error, please e-mail the sender and delete all copies. Thank you.
All statements of opinion or advice directed via this e-mail to our clients are subject to the terms and conditions expressed in the governing client engagement letter. The content of this e-mail is not legally binding unless confirmed by letter. The sending of e-mails to us will not constitute compliance with any time limits or deadlines. PKF O'Connor Davies, LLP is a member firm of the PKF International Limited network of legally independent firms and does not accept any responsibility or liability for the actions or inactions on the part of any other individual member firm or firms.
We inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this email, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.


*****************************************************************************

# EXHIBIT D



**PKF**
# O'CONNOR
# DAVIES
ACCOUNTANTS AND ADVISORS

**Return to Work Certification Instructions:**

Health Care Provider: Please complete this "return to work" form for purposes of certification.
Employees: If an employee is absent due to their own serious health condition, the form must be completed and submitted to the Firm's HR Director at least two business days prior before returning to work.
Employee name: _Charles Mattern_____
Date the condition began: _____

## I.    Full time duties, no restrictions

The employee is able to work a full, regular schedule with no restrictions, beginning _8|3|2_ (date)
Full time duties, with the following restrictions (conditions and duration):
_____
_____

**Please indicate restrictions, if any, below for:**
Standing (number of hours): _____
Walking (number of hours): _____
Sitting (number of hours): _____
Lifting (number of pounds): _____
Carrying (number of pounds): _____
Use of hands (repetitive motions, pushing, pulling): _____
Any other restrictions: _____

## II.    Reduced/Part time

The employee is able to return to work on a reduced schedule for ___ hours a day from _____ (date)
through_____(date)
Part time duties, no restrictions (specify number of hours per week authorized):
_____
_____

Part time duties, with the following restrictions (conditions including number of hours per week and duration of limitation):
_____
_____

Please indicate restrictions, if any, below for:
Standing (number of hours): _____
Walking (number of hours): _____
Sitting (number of hours): _____
Lifting (number of pounds): _____

PKF O'CONNOR DAVIES, LLP
500 Mamaroneck Avenue, Harrison, NY 10528  I  Tel: 914.381.8900  I  Fax: 914.381.8910  I  www.pkfod.com

PKF O'Connor Davies, LLP is a member firm of the PKF International Limited network of legally independent firms and does not accept any responsibility or liability for the actions or inactions on the part of any other individual member firm or firms.

Carrying (number of pounds): _____

Use of hands (repetitive motions, pushing, pulling): _____

Any other restrictions: _____

III.  **Intermittent duties, with the following restrictions (conditions (including number of hours per week) and duration):**

_____

_____

Please indicate restrictions, if any, below for:

Standing (number of hours): _____

Walking (number of hours): _____

Sitting (number of hours): _____

Lifting (number of pounds): _____

Carrying (number of pounds): _____

Use of hands (repetitive motions, pushing, pulling): _____

Any other restrictions: _____

_____

Additional comments, if any: _____

IV.  **The employee is unable to return to work until _____ (date)**

Name of health care provider: _Dr. Christopher A. Burke_

Address: _222 Middle Country Road  Suite 310_  _Smithtown, NY. 11787_

Telephone: _631-265-1622_

Type of practice/specialty: _Psychiatry_

Physician's Signature: _Christopher A. Burke_    Date: _8/3/21_

2